The fourth case for argument is 25-2082 from the District of Nebraska, A.B. Realty, et al. v. Scott Lane, et al. All right, Mr. Bruno, we'll hear from you first. Thank you. May it please the Court, Counsel, my name is Jason Bruno here on behalf of Appellants, A.B. Realty, LLC, Janet A. Anderson, and Kay Anderson. First, I'd like to thank the Court and the staff for accommodating me to appear virtually. Everybody's been great, and I'm sorry that I couldn't be there in person. I wanted to. We are here today seeking to reverse the dismissal on the 12B6 motion to dismiss of the operative complaint, which we believe contains extensive detailed facts, events, and dates, and states viable claims for blatant and multiple egregious constitutional violations. I would submit to this Court that in their dealings with this apartment complex, the City did not follow a single applicable statute, municipal code section, or provisions of a federal consent decree that was adopted to protect landlords from code enforcement abuses such as this. The first claim I want to talk about is the fact that the City undisputedly searched and removed Kay and Janae from their home based on an invalidated warrant. The City made it illegal for Kay and Janae to enter their home, their own home, for several months. They shut off the utilities, and this was all done solely based off an inspection warrant that was procured by fraud. The Chief Housing Inspector, Appellate Scott Lane, claimed to the issuing Court that he had sought consent from the landlord, which was required by the authorizing statute, Nebraska Revised Statute section 29832. In fact, as Mr. Lane admitted and the trial court found, that statement was false. Specifically, the trial court found a fiance statement was false, and without said false statement, the search warrant could not be properly issued. But Mr. Lane did not just stop at just the one false statement. The trial court found, after an evidentiary hearing, that Mr. Lane made misstatements, an implication that this Court considers as negligent. Just a few examples, Mr. Lane represented that the City had inspected the apartment complex, that Mr. Anderson had used threat tactics against the tenants, that Mr. Anderson had been uncooperative, that the City had received code violation complaints, which were a requirement to inspect any landlord property, and that there was a recent explosion to kind of give the impression that there was a safety hazard or the need for the City to act on an emergency basis. That warrant was conclusively declared invalid by the trial court, the county court, but it was ultimately used to search and effectively seize Kay and Janae's home for an indefinite period of time. Well, wasn't the warrant ultimately upheld by the Nebraska Supreme Court? Well, the Nebraska Supreme Court made statements to that effect, but that couldn't be the case here because the invalidation of the warrant was never appealed, so the Nebraska Supreme Court never had subject matter jurisdiction. They never gave anybody notice that that issue was going to be considered. There is no evidence to base that on. There was clearly a violation of the authorizing statute in that it's undisputed that the City did not seek or obtain consent, and all of the facts at the trial demonstrate that the representations made to the county court were not true. What was your argument? Did the Nebraska Supreme Court lack subject matter jurisdiction? Over that issue, specifically that issue. And if you look at the case law cited in my briefing, the Nebraska Supreme Court specifically says, hey, we don't have jurisdiction over issues that are not appealed before us and presented appropriately in the pleadings. That never happened in this case. Okay, I got you. Thank you. Yes. Mr. Anderson found out that the warrant issue was being revived after the decision was rendered, but more importantly, even if the Nebraska Supreme Court's statements regarding the warrant were valid, they're certainly not valid upon A.B. Realty or Janae Anderson because they weren't parties to the criminal case. But the fact that Kay and Janae were kicked out of their home and their home was searched based on an invalid warrant with absolutely no established probable cause we believe requires reversal on that ground alone because it violates the Fourth and Fourteenth Amendment. Kind of the same thing with the shutdown of A.B. Realty's entire apartment complex. That was done solely based on a fraudulently obtained warrant. What happened in this case is basically this apartment complex was in the crosshairs of the city of Omaha, as our complaint establishes. So the city was trying to effectively send a public message to try to pass an inspection ordinance for landlords. This, what we call a raid, was preplanned. It was well organized. And what they did was they used that warrant to shut down the entire apartment complex, which included 13 buildings, 100 apartments, including Kay and Janae's home, the common areas, the offices. It's undisputed that there was no consent from the tenants for any inspection. There was no consent from A.B. Realty, the owner, and the city forced all of the tenants to relocate from the property. They closed the entire apartment complex on September 20th, 2018, and it wasn't fully allowed to be reopened until September of 2021 when most of the same refugee tenants moved back in. We believe this presents a fundamental and clear violations of the Fourth and Fourteenth Amendments, which were rights separately belonging to A.B. Realty. So that is another reason we're seeking reversal. Finally, the claim I want to talk about is related to the procedural due process claim. As the brief and the complaint set forth, there are numerous safeguards in place in Omaha that protect landlord rights, protect against unwanted searches and seizures. That includes the statute upon which the city relied upon to do everything in this case, which was Nebraska Revised Statute Section 29832, but there's also numerous Omaha municipal code sections specifically related to enforcement of landlords and code violations. There's also a federal consent decree that arose out of a suit between landlords in Omaha and the city of Omaha for previous unfair targeting of landlords, and that consent decree was designed to prevent exactly what has transpired here in this case. There are numerous procedural due process defects, including the most basic one. In that regard, with respect to the due process claim, can you tell me what specific property interests were identified in the complaint and which person or entity owned those particular property rights? I sure can, and the ones were the rights to unlawful searches, unlawful seizures, and all of the due process requirements that the city would need to go through in order to effectively enforce a code violation. All of the violations relate to AB Realty LLC. As the owner of the property, all of the rental apartments, all the common areas, exceptions. But what is the property interest? Is it missing rents? Is it access to the property? And then where in the complaint can I find, with some specificity, what is pled to be the property interest and who is the owner of that property interest? There's detailed allegations of who the owner of the property is, who the owner of K and Landlord's Tenant is, and the property interests are they're operating a business for one. They have private property rights that protect them from unlawful searches and seizures. And yes, they're all identified in the complaint. I mean, we went through a whole litany in designated order with dates and events describing all of the things that happened, what due process was due, who was due to, and how it wasn't provided. Can you elaborate on that then on appeal? What is your argument about the process that was due that was not provided? Okay, I'll give you a couple examples because there's a lot of them. The first is there is a remedy in Omaha where in order to have a code violation, there needs to be a challenge mechanism. So in other words, the city can't just say, hey, there's a code violation and do everything. There is a specific procedure and a specific body implemented by a federal consent decree that's enacted in Omaha Municipal Code 48-105 that's called the Property Maintenance Appeals Board. What happened in this case is... And Counselor, is that a subsection of the city or is that an independent entity? Well, it's supposed to be an independent entity, but it's kind of a subsection of the city. And it was implemented because what was happening before is the city was basically serving as the appellate body to enforce its own code violations. Well, here, my client timely appealed to the Property Maintenance Appeals Board and said, hey, I don't believe there's any code violations. It was the city's burden to prove them. The Property Maintenance Appeals Board never found any code violations. But more importantly, what happened is the city and A.B. Realty agreed to a reasonable time schedule to make improvements or conduct repairs about the conditions of the apartments that the tenants caused. So my clients followed the procedures. The Property Maintenance Appeals Board approved everything that was going to happen and said, okay, you have plenty of time to do this. It's undisputed that A.B. Realty met all the requirements imposed by the Property Maintenance Appeals Board. In fact, they finished early. So no adverse action or no closing of the apartment should have ever been taken, but they were. So that's undermining their due process. The second thing are two important ones. Who's to blame for that, counsel? I want you to go back to where you were headed, but just in common language, who's to blame for that? You said that there was an agreement between the parties that was approved by the Property Maintenance Board. So what did the Property Maintenance Board do wrong? We're not blaming the Property Maintenance Board for anything. We're blaming the city for taking actions while that appeal was pending and before there was any resolution that A.B. Realty did anything wrong or committed any code violations. Well, that never, ever happened here, and so what the city did was act prematurely. They should have waited until the due process rights of A.B. Realty were satisfied, found adversity against them, and then took adverse action. Well, the next one I want to talk about, and I already did kind of, is the notice to the landlord. Before any inspection could happen, the city is supposed to try to obtain consent to search by the landlord. Well, that didn't happen in this case, and that's important because the city knew they needed A.B. Realty's consent before they could do this raid, which is exactly why they lied to the court and said they tried to obtain it when they did not. The third one is an actionable complaint. Because of what happened in the past, Omaha's procedures now require an actionable complaint from a tenant before the city could take any action. That's adopted in the consent decrees, the city's own policies and procedures. So what the city did here is it used non-city actors, Pele's Weibel and Block, to fabricate complaints, to fabricate emergency events or dangerous events, and then pass those complaints and concerns off as those of the tenants. So that's the second one. The third one is Omaha Municipal Code 4862 requires a reasonable time to make any repairs. Well, it's undisputed in this case that the time awarded to A.B. Realty to make repairs was not reasonable before adverse action was taken. Scott Lane, the chief housing inspector in Apelli, testified that 90 days was not a reasonable time. The chief housing inspector, excuse me, the head inspector for the apartment, Apelli, Mr. Mulcahy, testified to the same thing. The reasonable time in this case is undisputed. The contractor who performed the repairs basically said, hey, the couple of years it took me to go through all 13 of these buildings and fix them up, that was a reasonable time, and the Property Maintenance Appeals Board agreed. So they violated that procedural due process. They also couldn't shut down the apartments or any apartment for that unless there is valid justification for a complete shutdown, and their policies and the code sections require something like an imminent danger. For an example, the city's policies say fire, partial or complete catastrophic failure, flood. There's no evidence in this case of why a complete shutdown of everything was needed, or which alleged violations of the 2,000 that they assessed rose to that severity level. In fact, the evidence shows the opposite. There was no imminent threat here. The city knew they were going to take this action for months. They never told any of the tenants to leave because they can get killed or their families were in danger. In fact, they instructed Appellees Weibel and Block as their proxies to basically go back to the apartments and try to create a reason to conduct a search and seizure. My clients were entitled to extensive, easy, discernible procedural due process, but they were deprived of effectively all of it. I'm sorry. I'm just observing that your time has expired. Okay, sorry. I don't have a clock on my end. I see. I thought they might have put it in the visual for you, but it's down to zero. We thank you for your argument and we'll hear now from the Appellees. Mr. Dolan, we'll hear from you first. Good morning. May it please the Court, my name is Tim Dolan, and I'm here this morning on behalf of Appellees Lane, Mulcahy, Kuhn, and the City of Omaha. The District Court correctly found that the complaint does not state a claim upon which relief may be granted, and one of the reasons was just aptly highlighted for 15 minutes. That complaint, as the argument, points in every different direction at once. On the one hand, there was no basis whatsoever for the City or anybody to go into those apartments at Yale Park. On that same hand, Ms. Block, Ms. Weibel were fraudulently coercing these tenants into making false complaints. But on the other hand, a contractor testified that the nearly two years that it took to make those repairs were necessary, that that's how long those repairs took. So it's against that confusing shotgun background that the District Court was called upon to evaluate the four corners of this complaint and to determine whether it stated a cause of action, and it absolutely correctly ruled that this complaint does not. In further argument to this Court, the appellants continued to fall back on a legally incorrect assertion that the inspection warrant was invalidated. It was a Douglas County court that initially entered an order suppressing that. However, that order was appealed to the District Court, which reversed on different grounds. It is correct that the District Court did not say, the County Court, your conclusion that failure to follow state law regarding what has to be in an inspection warrant was not a Fourth Amendment matter. The District Court did not say that. However, when the District Court reversed, as a matter of Nebraska law, that vacated the Douglas County District, their County Court's order. So this continued pounding on invalidated warrant, illegal warrant, fraudulently obtained warrant is false as a matter of Nebraska law. I did not cite that in the brief. However, that statute is actually 25-2733 that talks about the effect of a District Court judgment reversing a vacating and reversing a County Court judgment. There are two main reasons why this Court should disregard claims that the inspection warrant was invalidated. The first is just the independence of the Fourth Amendment. Since Virginia v. Moore in 2008, the Supreme Court has held that the Fourth Amendment doesn't really get bogged down in state statutes constraining authority or granting heightened protections. And this Court recognized that very same principle in Oglesby v. Lausanne back in 2019. So these are not necessarily novel concepts. That failure to comply with a state law really doesn't impact the probable cause analysis. And in this case, State v. Anderson, the Nebraska Supreme Court, found even with all of the faults that the plaintiffs have pointed out, the warrant established probable cause. And so that is the independence of the Fourth Amendment standing above and beyond state statutes is one reason why the plaintiffs or the, excuse me, the appellants simply cannot state a claim based on the inspection warrants alleged invalidity. The other, Your Honors, is preclusion. It is, again, in front of this Court, all of the appellants' legal interests bled together. For them to say, well, but it was just Kay Anderson in that criminal case. But they're all claiming the same interests. And that is another thing that the district court correctly noted is it's difficult to tell who's asserting what. And this Court has also asked, what property interests are various people claiming? And in this case, all of them, the one thing or the one right that is crystal clear that all of them are claiming is the right to be free from a search conducted pursuant to a warrant that did not comply with Nebraska law. But the various reasons why this Court should not accept the Nebraska Supreme Court's judgment upholding that warrant simply don't hold water. The first, claiming that the city of Omaha or the state of Nebraska didn't appeal it, doesn't matter. They didn't have to. When it went up, again, when it went up to the district court the first time, and the tortured procedural history is given in State v. Anderson. But when it went up to the district court the first time, it was reversed. As a matter of law, that was vacated. So the state really didn't have to appeal anything. But even if somebody having to appeal it was the cornerstone, K. Anderson in State v. Anderson, it's one of the very first things the Nebraska Supreme Court notes, is he is challenging the evidence obtained by this warrant. K. Anderson. Counselor, I don't know how you've divided time, but I'd like to hear you address the due process allegations. If you want to do that on your own schedule, that's fine. But what was the basis for the district court's action on the pre-deprivation and post-deprivation due process claims? Largely just a failure to state a claim, Your Honor. Was it just a failure to plead? Was that it? Yes. And, Your Honor, the district court did correctly note that these statutes, if you're attacking the city of Omaha for not establishing fair procedures, as counsel even conceded, the city municipal code does establish various procedures. Was this procedure afforded to the plaintiffs here after the deprivation? Were they given an opportunity to challenge the notices and so forth? They were, Your Honor. And what did the board do? Well, it continued to grant continuances. I believe that somewhere in the record there's something like seven continuances that the PMAB granted in order to give more time to effectuate the repairs. What did the board rule on? Did the plaintiffs argue to the board that they didn't commit a violation in the first place? And if so, what did the board do on that claim? Throughout, consistently, Your Honors, there has been a denial that they have done anything incorrect. There has been an attack on the evidence, on the reports. Okay. So what did the board say about that? The board didn't, Your Honor, I don't know. The board never decided that? I don't think that it decided that with crystal clarity. Well, if somebody is coming in and just asking for more time, it would be one thing if it was the board that continued punting. However, that means Well, I understand they asked for several continuances, but what happened at the end? Well, at the end, they were granted leave to reopen. The contractor who had made the repairs said that those repairs had been done. And did they abandon their argument that they had never violated in the first place, or was that adjudicated, or is that still pending? It is not still pending. This would have wrapped four years ago. And I don't know exactly what type of bow was put on it, so I apologize. But it was ultimately timed out. All right.  Did you have a question? Time of Ms. Hayes. Go ahead. Just to clarify, the continuances were at the request of the appellants now, right? Yes, Your Honor. They asked for continuances to do the repair work. Yes. And then the repair work was completed and they were allowed to reopen. Yes. But what I'm trying to understand is whether there was separately a challenge to the violation finding at all, and if so, what's the significance of that? Not before the—I mean, Your Honor, before the board, they would have been a bit of a hybrid approach, saying we don't think these are necessary. However, we would like more time to make those. It's a lot like the argument that you've heard here today. It's a little bit of a hybrid, a mixture of both. At the—in State v. Anderson, Kay Anderson clearly argued that none of these repairs were necessary, that this was all created and fictitious, but the Supreme Court found otherwise. And I'm now far into co-appeal at this time, so I apologize for that.  So we'll hear from Ms. Hayes. Thank you. Good morning, and may it please the Court. My name is Sydney Hayes, and I'm here on behalf of the private party appellees, Hannah Weibel and Lori Vlach. The district court's order dismissing the claims against them should be affirmed for three reasons. First, the district court was well within its power to dismiss the complaint due to its reliance on improper, conclusory, shotgun-style allegations. Second, the private party appellees are purely private parties, not State actors, and therefore not subject to liability under Section 1983. And finally, even if they were, the complaint fails to state a claim that they violated appellants' constitutional rights. Now, briefly on the issue of shotgun-style allegations, this case has been pending before the district court for over six years, and appellants had multiple opportunities to plead their claims, indeed an opportunity to re-plead after a detailed order by the district court dismissing the original complaint. Nevertheless, the complaint is still rife with conclusory and shotgun-style allegations which essentially say things like defendants violated plaintiffs' rights. It fails to inform defendants of the specific claims against them. And I think there's a textbook example of this in paragraph 214 of the Second Amended Complaint, which is the primary paragraph of the second cause of action, which is on appeal before this Court. And that states, defendants violated and or aided and abetted violations of the rights of plaintiffs guaranteed under Federal and State law, including. It goes on to list two Federal statutes, four provisions of the U.S. Constitution, three provisions of the Nebraska State Constitution, and 11 separate alleged violations ranging from defamation to unlawful search and seizure. And then contains a catch-all for all other conduct and actions as described in this complaint. This does not inform defendants of what the claims are against them, and it puts them in an exceedingly difficult position to respond to the allegations, and it also puts courts in a difficult position to be able to address things like motions to dismiss. And it infects not just the motions to dismiss stage, but the entire case, because the complaint shapes discovery, summary judgment, trial. It infects the entire proceeding. There's a recent case on this from the Ninth Circuit, Gibson v. City of Portland, from just this last January, talking about the appropriateness of courts dismissing complaints that rely on shotgun allegations, especially if they've had multiple opportunities. And I think the shotgun allegations in this complaint also warrant affirmance. Now, second, Ms. Weibel and Ms. Flach are not State actors. I think everyone agrees that my clients are not City employees or government contractors. Instead, appellants rely on a joint action theory of liability. Now, that requires that the private actors reach a mutual understanding, a meeting of the minds with the government regarding the unlawful objective of the conspiracy. Now, there are no such allegations here. Now, appellants' claims have coalesced, at least as have my clients, around the validity of an inspection warrant obtained by the City and statements made by a Chief Inspector Lane in obtaining the warrant. Now, there's no allegation that Ms. Weibel and Ms. Flach were involved in the warrant application process. In fact, if you look closely at the complaint, there's not a single allegation that my clients ever spoke with Chief Inspector Lane. Instead, the allegations are that they began working with refugee tenants in 2018, took photos of their apartments, documented code violations they witnessed, and helped refugee tenants prepare complaints, and then sent that to a Mr. Gerald Kuhn at the City, who then forwarded those complaints on to Mr. Lane. The complaint also alleges that some of the information provided by my clients was false, though it doesn't allege that they had any reason to know that that information was false. Overall, under this Court's precedent, that is not sufficient to show joint action or state action by my clients. There's two cases I would point this Court to. One is Gibson v. Regents Financial Corp. at 557 F3D 842, where this Court held that simply furnishing information to law enforcement does not constitute joint activity, even if that information is false. Now, finally, appellants have failed to allege that Ms. Weibel or Ms. Botch violated their constitutional rights. Again, their claims rise and fall with the validity of an inspection warrant obtained by the City of Omaha. And there are several problems with that. First, again, there is no alleged connection between my clients and the actual application for the warrant. For example, counsel focused heavily today on the inaccuracy of the comments about prior refusal in the inspection warrant. There's no connection between my clients and those alleged errors. Second, Mr. Anderson already challenged the validity of the inspection warrant in Austin State Court. In fact, if you look at the very first paragraph of the appeal, it specifically states that Mr. Anderson appealed the validity of the inspection warrant. And for those reasons, I ask that this Court affirm. Thank you. Very well. Thank you for your argument. Mr. Bruno, you used all of your time. I understand that you couldn't see the clock. So on that basis, we'll give you a minute for rebuttal if you'd like to respond. But first, you'll have to activate your microphone. Thank you, Your Honor. I appreciate that. And the extra time is appreciated. Let me get to it. Due process violations. A question was asked of counsel whether the parties were given due process, and there was no real answer because they weren't. There was clearly no valid complaint in this case. There was clearly no reasonable time. My AB Realty clearly timely appealed to the Property Maintenance Appeals Board, who never found any violation, despite the fact it was the city's burden of proof. There was no attempt to obtain consent from the landlord. Regarding, there was a statement that Mr. Anderson lost the validity of the inspection warrant in the State Court. No, he did not. He won after a full evidentiary trial. He won so badly that the city or the state never appealed from it. And there was no notice by the Supreme Court that they were going to revisit that issue, but that kind of shows the deprivation of due process that my clients have been subject to throughout these proceedings and why the intervention of this court is necessary. And I see that I've exceeded my minute, and I appreciate it. And again, thank you for allowing me to appear virtually. It is greatly appreciated. Very well. Thank you for your argument. Thank you at all, counsel. The case is submitted, and the court will file a decision in due course. Thank you.